SHO-ME POWER CORPORATION, a Corporation, Respondent, v. A. FANN, BEULAH FANN et al., Appellants, No. 45191—292 S. W. (2d) 91.

Division One, July 9, 1956.

*M. J. Huffman* and *Haymes & Haymes* for appellants.

*Gregory Stockard, Garner Moody, Green & Green, Will H. D. Green* and *H. D. Green* for respondent.

[92] WESTHUES, C.—The Sho-Me Power Corporation instituted a condemnation proceeding for a right of way 100 feet in width across the land of the defendants A. Fann and Buelah Fann, husband and wife, and other landowners. The suit was filed in Webster County. Commissioners appointed to assess damages filed a report fixing defendants' (A. Fann and Buelah Fann) damages at $2,000. Exceptions were filed by the Fanns [93] and they are the only defendants interested in this particular suit. Thereafter, a change of venue was granted and the case was transferred to Hartville, Wright County, Missouri. A trial by jury resulted in a verdict of $11,000 in favor of the defendants. The trial court granted a new trial and defendants appealed.

The trial court sustained plaintiff's motion for new trial "on ground No. 1 of Plaintiff's Motion for new trial." Ground No. 1 of the motion was directed at the method of selecting the regular panel of jurors from which the trial jury was chosen. The assignment is rather lengthy, covering two typewritten pages. It contains the following statement: "After the trial of this action plaintiff, *it's* officers and counsel learned for the first time that the regular panel of jurors from which was chosen the jury before whom this action was tried, was not selected according to law." It was particularly set forth in the motion that Judge Crain, the Circuit Judge of that circuit, was not present when the panel was selected; that Judge Crain had not had sufficient notice of the date to select the panel; that the county court refused to give Judge Crain an opportunity to be present; that when Judge Crain arrived at Hartville, the jury panel had been selected. We need not mention other matters set forth. An attorney for plaintiff made an affidavit stating that the facts set forth in the motion concerning the jury panel were true to his best knowledge and information.

The trial judge heard evidence on the motion which, in our opinion, brought to light either a misunderstanding of the statutes governing the selection of jury panels or a disregard of such statutes. The controlling statutes in this case are Sections 494.230, 494.240, and 494.250, RSMo 1949, V.A.M.S.

The case was tried during the June, 1955, term of court. The Circuit Clerk of Wright County was called as a witness on the hearing on the motion for new trial. In answer to questions asked by the trial judge, the clerk testified that when the panel for the June term, 1955, was selected, one of the judges of the county court drew the slips carrying the names of jurors from the jury box and she, the clerk, recorded the names. This method was in violation of the provisions of Section 494.250, supra; 50 C.J.S. 892, Sec. 165. We so held in State v. McGoldrick, Mo., 236 S.W.(2d) 306, l.c. 307 (1-3). We deem it sufficient to refer to that case and the authorities cited therein. The statute should be followed. In Section 494.250, supra, it is clearly stated, "The clerk of the board of jury commissioners, so situated as to be unable to see the names on such slips, shall, publicly, in the presence of said board of jury commissioners, proceed to draw out names separately and singly from one township until he gets the number of names required from such township for petit jurors and an equal number as alternate jurors to serve on petit juries if summoned: * * *."

The evidence of the clerk disclosed a further disregard of the statute (Sec. 494.240, supra) which provides in part that "The board of jury commissioners of each county not less than thirty days before the commencement of the circuit court or other court having civil and criminal jurisdiction, or civil or criminal jurisdiction, shall select names of not less than four hundred persons having all requisite quali-

fications of jurors; * * *." The clerk's evidence was that four hundred names were placed in the jury box on January 18, 1955. That was more than thirty days before the February, 1955, term of court. Sec. 478.307, RSMo 1949, V.A.M.S. The panel for the February term was drawn from that number. The clerk testified that no names were added for the June term. Note the evidence of the clerk on this point:

"Q. Do you know when the names in those envelopes had been selected by the Jury Commission?

"A. Yes.

[94] "Q. Was it just before the jury was selected?

"A. You mean for the whole year?

"Q. Yes, ma'am.

"A. No, that was back in January.

"Q. And no new names had been added?

"A. Certainly not."

The statute contemplates and provides that when a panel of jurors for a term of court is to be selected that there be four hundred names of persons qualified for jury service in the jury box. Selecting four hundred names at the beginning of the year to be used for the entire year and not adding any thereto at the following terms of court is not a compliance with the statute.

 The evidence of the clerk disclosed a further irregularity. The following are questions by the trial judge and answers by the clerk:

"Q. This list of names that went to make up the jury panel which was selected back in January, did you make up the list from the three townships?

"A. Yes.

"Q. What township did you make it up from?

"A. Montgomery, Van Buren and Clark.

"Q. From what sources did you obtain those names?

"A. From the poll books.

"Q. From the poll books?

"A. Um-hmm.

"Q. Where were the poll books?

"A. In Little's office.

"Q. Did you go in there and examine the books?

"A. I think I took them in my office.

"Q. Were any of the other members of the Jury Commission present when you did that?

"A. No, I don't think so."

Section 494.230, supra, provides that the clerk of the circuit court shall be a member of the board of jury commissioners and that such clerk shall be the clerk of the board in the performance of the clerical part of their work. The portion of Section 494.250, quoted supra, says that the clerk "*shall*, publicly, * * * draw out names" from the jury

lists. (Emphasis ours) It is our opinion that by Section 494.240, supra, the legislature did not intend for the clerk of the jury commission to select names to make up the list of four hundred for jury service. Furthermore, by Section 494.250, supra, the legislature made it mandatory that the clerk of the jury commission draw the names from the list of four hundred (drawn pursuant to Sec. 494.240) to make up the panel of jurors to serve for the next term of court. In the case before us, both sections of the statute were violated as is shown by the clerk's testimony. In our opinion, the legislature has prescribed an excellent method of selecting jurors. It has provided safeguards that should not be disregarded. State v. Rouner, 333 Mo. 1236, 64 S.W.(2d) 916, 92 A.L.R. 1099; 50 C.J.S. 875, 876, Sec. 155.

■ The evidence further disclosed that Judge Crain requested that the board meet sometime between January 20 and January 24, 1955. The request was denied and the meeting date was set for January 18. The judge notified the clerk that he could not be in attendance on that date and asked that the matter be postponed to January 20. This request was not granted and the meeting date was not changed. The judge, however, did appear on January 18 about 9:00 a.m., and found that the clerk was then copying the list of jurors. The names had been previously selected and the clerk had been instructed to type the names on January 18. The circuit judge **[95]** was not given an opportunity to participate in selecting the four hundred names placed in the jury box.

The purpose of the statute is that the circuit judge, as well as the county judges, take part in selecting jurors. The board should attempt to fix dates for the transaction of business when all members can attend.

■ Defendants say in their brief that the "question of whether there was any substantial irregularity in selecting the jury panel is one of law, so the granting of a new trial in this case does not fall within the rule of the exercise of sound-judicial discretion." There can be no question or doubt in this case, and we so hold, that there was a substantial irregularity.

Defendants say that there was no showing of prejudice. The trial court granted a new trial which indicates that the judge was of the opinion that there was prejudice. In such circumstances, this court defers to the ruling of the trial court. Woodworth v. Kansas City Public Service Co., Mo., 274 S.W.(2d) 264, l.c. 270, 271 (4-7). Defendants say further that "Plaintiff failed to prove that knowledge of any irregularity came to it only after trial." The allegations as to this matter in the motion for new trial were sworn to by an attorney for plaintiff and they were not controverted. The trial court was evidently satisfied with the showing made. The case of McCormack v. McNamee, Mo., 274 S. W. (2d) 272, l.c. 275 (4, 5), cited by defend-

1048

ants, recognizes the rule that a party may raise for the first time, after trial, any irregularity in the selection of a jury if knowledge thereof became known to him after trial.

The order granting a new trial is hereby affirmed. All concur.